# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **ACI WORLDWIDE CORP.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 16-981 |
| | : | |
| **TRACFONE WIRELESS, INC.** | : | |

**KEARNEY, J.**                                                                 **JULY 31, 2017**

## MEMORANDUM

Article III of the Constitution permits federal courts to resolve certain state law contract disputes between citizens of different states. To maintain subject matter jurisdiction over a state law contract dispute between two corporations, the party seeking to invoke our limited "diversity of citizenship" jurisdiction must show the corporations' citizenship are diverse in both state of incorporation and principal place of business. Resolving how we evaluate a corporation's principal place of business, the Supreme Court specifically defined a corporation's "principal place of business" as its nerve center from where its officers or directors direct, control and coordinate its activities. In many cases, the nerve center is found where the corporation locates its headquarters or its principal officers set its course and make final decisions. But in a fluid merger and acquisition marketplace where a headquarters may remain in a legacy site but the corporation is actually directed from a location defined by a new owner, we must look beyond mere puppet jurisdiction based solely on where the senior officer or president is a citizen or solely where it maintains its headquarters. We carefully examine facts presented by the party invoking our limited jurisdiction to discern the singular nerve center. Today, the vague and limited evidence adduced by the Nebraska incorporated plaintiff with a longstanding Nebraska

presence does not persuade us of its Nebraska nerve center. Rather, following discovery and based on undisputed facts, we find the plaintiff corporation no longer maintains its nerve center in Nebraska but now directs, controls and coordinates its activities from Florida, the location of its president, several vice presidents and its shareholder parent. We must decline subject matter jurisdiction when, as here, the plaintiff corporation cannot show diversity of citizenship based on its principal place of business/nerve center in Florida which is also the undisputed principal place of business for the defendant corporation.

I.   **Facts**

Plaintiff ACI Worldwide Corp. ("ACI Corp") is a Nebraska corporation with a presence in Nebraska since 2007.[1] ACI Worldwide, Inc. ("ACI Inc.") is a Delaware corporation owning ACI Corp as a subsidiary.[2] Plaintiff ACI Corp has 533 employees in Nebraska, 278 employees in Georgia, 147 employees in Florida and over 800 employees in other locations.[3] Wholly owned by ACI Inc., ACI Corp has two directors and fourteen officers.[4] Five of these fourteen officers, and both of its defined "directors", work from Nebraska from where they provide "significant managerial oversight" and "are empowered to make decisions setting and carrying out corporate policies."[5] The Nebraska officers and two directors are responsible for corporate finance, legal, global procurement and global tax.[6] ACI Corp maintains corporate records in Nebraska, pays it taxes from Nebraska and issues its paychecks from Nebraska.[7]

ACI Corp's president and six of its vice presidents and treasurer are in Florida.[8] The Florida officers are responsible for sales administration, revenue management, risk, M&A, installed administration, global overhead and AOD management.[9] ACI Corp's 2017 Foreign Profit Corporation Annual Report identifies two of its three corporate officers are located in Florida, including its president.[10]

ACI Inc., the parent corporation, leases office space in Florida for its principal executive headquarters and conducts its operations from Florida. The discovery confirms several of the ACI Inc. officers also run ACI Corp in Florida. For example, ACI Corp's president and treasurer are also executives of ACI Inc. in Florida. ACI Corp does not dispute many of its managers either direct it from Florida or from instructions they receive from ACI Inc.'s executives in Florida. The common management is confirmed by one ACI Corp executive swearing he worked for both ACI Inc. and ACI Corp as "the same organization."[11]

We now review the facts concerning ACI Corp because it sued Tracfone Wireless, Inc. alleging breach of a Master Services Agreement for certain security and fraud protection services.[12] ACI Corp alleged diversity jurisdiction based on its Nebraska incorporation and principal place of business and Tracfone's Delaware incorporation and Florida principal place of business.[13] Following discovery, Tracfone now moves to dismiss arguing we lack subject matter jurisdiction as ACI Corp has not met its burden of demonstrating diversity as both parties are Florida citizens.

## II.  Analysis

Federal courts are limited by Article III to resolve only certain types of cases in deference to a state's authority to resolve local disputes.[14] Federal court jurisdiction includes, under Article III, disputes between citizens of different states if the citizens are completely diverse.[15] For purposes of jurisdiction, corporations are citizens both of the state in which they are incorporated and in its principal place of business.[16] A corporation's principal place of business is its nerve center defined as where the corporation decides the strategy and engages in the executive decision-making defining the corporation's business.[17] There can only be one principal place of business.[18] We do not find a principal place of business simply because the managers are located

in one state or the public perception is the company belongs in a certain state.[19] The issue is solely where the executive final decision making is made.[20] Thus, a corporation could have all of its operations, manufacturing, sales, research and development and the majority of its senior management in a state that is not its principal place of business.[21]

The burden of establishing subject matter jurisdiction is upon the party invoking our jurisdiction.[22] We must examine the evidence to attempt to find the one principal place of business for the corporate party. We view this standard based upon a preponderance of the evidence.[23]

Contrary to much of the tone in Tracfone's briefing, we must avoid the temptation to evaluate ACI Corp's nerve center based on its parent ACI Inc.'s headquarters. Tracfone cites *LinkedIn* references and one corporate officer's description of working for the same organization. These *ultra vires* references do not create a basis to find ACI Inc.'s nerve center is automatically the same as ACI Corp. Absent evidence ACI Inc. exerted overwhelming control over ACI Corp or they disregarded corporate formalities, we must focus solely on the ACI Corp's nerve center.[24]

Our court of appeals' guidance in *Johnson* more aptly informs our decision. The court affirmed a nerve center based on the "modest" office space in Wilmington where a three person board controlled all of the company's ownership decisions although, as here, much of the day-to-day operations occurred in another state. The corporation employed one person in Wilmington who devoted 20 hours a year to its operations. The corporation directed its employees in other locations to sign documents and enter into transactions. Relying on *Hertz*, our court of appeals found Delaware (with one 20 hour a year employee in a ten by ten office) to be the principal

4

place of business because the corporation's board controlled its core activities through decision-making based in Delaware.

In *Robertson-Armstrong v. Robinson Helicopter Co., Inc.*, Judge Bartle found the nerve center of the subsidiary located in Rhode Island although the public face and manufacturing facilities with several decision-makers located in Pennsylvania.[25] Judge Bartle, after reviewing *Hertz* and *Johnson*, discounted the corporation's public face and found evidence the president and CEO located in Rhode Island directed and controlled the corporation's "operations and finances even while she delegated some authority to other officers..."[26]

In *Liberty Insurance Underwriters Inc. v. Wiss & Company, LLP*, the court evaluating competing proofs for the nerve center found the corporation's president and several other officers to "truly direct, control and coordinate the corporation." [27] Required to find one nerve center, the court found direction as to business plans and involvement in the dispute before the court in one state is not enough when these decisions must be approved by the corporate president in another state. We appreciate ACI Corp's possible internal conflict when general counsel and outside trial counsel attempt to argue the corporate president and six of its vice presidents are not actually controlling and directing ACI Corp. As the party invoking our jurisdiction, ACI Corp must show its actual control and direction are not with its president, six vice presidents and 147 employees in Florida. It has not done so.

Focusing on the location of the president alone could lead to jurisdictional manipulation. We must protect against jurisdictional manipulation where a company simply sets up a small office with a mail drop or location of executive retreat and characterize it as a nerve center.[28] ACI Corp, perhaps in deference to its executives' central role, does not persuasively show the limited, rubber stamp, role of its Florida president and six vice presidents. Further, ACI Corp is

5

not just a mail drop in Florida as it employs 147 persons in Florida. This is not a situation where ACI Corp arranges an annual retreat or small office with one computer simply to accommodate a Florida executive.

We have no evidence discounting the central role of a president of a Nebraska corporation defining the direction, control and coordination of ACI Corp's activities. Under Nebraska law, the president of a corporation "by the very nature of that office, is the head of the corporation, its general agent, chief executive officer and general manager of corporate affairs."[29] ACI Corp does not dispute this authority of its president in Florida. ACI Corp also does not demonstrate an active board of directors or other persons actually directing its affairs other than the president. While tax and securities filings are not controlling, we also note ACI Corp identified <u>two of its three</u> officers (66%) in tax filings as Florida citizens. We are not suggesting, nor finding, our analysis is based solely on ACI Corp's president's residence; rather, his location along with six vice presidents, over 140 employees and under Nebraska law, evidences direction, control and coordination in Florida.[30]

ACI Corp's only answer is based on the quantum of contacts and center of corporate activities with Nebraska, a test formerly applied in this Circuit before being rejected by the Supreme Court in *Hertz*.[31] In describing the "center of overall direction, control, and coordination,"[32] ACI Corp presents an affidavit of its Vice President-Legal which tellingly does not describe its center of overall direction. Rather, it presents vague conclusions about Nebraska officers "empowered" to make final decisions on limited areas, filing of tax returns in Nebraska and reliance on internal records. It missed the *Hertz* lesson.[33] Absent proof contrary to the role of a president of a Nebraska corporation under law, we must find ACI Corp's Florida president,

with six Florida vice presidents and much more than mail box drop or ten by ten office is the center of ACI Corp's overall direction, control and coordination.

## III. Conclusion

As of the filing of this action, ACI Corp's nerve center is located in Florida. It is undisputed its president, treasurers and six of its vice presidents are in Florida. While it is also undisputed some, but not most, of the day-to-day operations are run through vice presidents and other employees in Nebraska, ACI Corp has not met its burden of showing its nerve center is located in Nebraska. Absent diverse citizenship between two corporations with Florida nerve centers, we must decline subject matter jurisdiction.

---

[1] ECF Doc. No. 70, ¶4.

[2] *Id.*, ¶¶ 5, 6.

[3] *Id.*, ¶ 7.

[4] *Id.*, ¶ 9. There is no evidence ACI Corp's description of an employee as a "director" equates to being a member of the Board of Directors. The parties did not provide the identity or location of ACI Corp's board members, if any.

[5] *Id.*

[6] ECF Doc. No. 70-1.

[7] ECF Doc. No. 70 at ¶¶ 13, 14.

[8] ECF Doc. No. 70-1.

[9] *Id.*

[10] ECF Doc. No. 52-3.

[11] N.T. Christopher Harper, May 31, 2017, at p. 6, ECF Doc. No. 52-7.

[12] First Amended Complaint, ¶ 10, (ECF Doc. No. 32).

[13] *Id.*, ¶¶ 1, 2.

[14] *Hertz Corp. v. Friend*, 559 U.S. 77, 84 (2010) (citing *Kline v. Burke Constr. Co.*, 260 U.S. 226, 233-234 (1922); *Mayor v. Cooper*, 6 Wall. 247, 252 (1868)).

[15] U.S. Const. Art. 3, §2, cl.1; 28 U.S.C. §1332(a).

[16] *Hertz Corp.*, 599 U.S. at 80.

[17] *Id.* at 92-93.

[18] *Id.* at 93; *S. Freedman & Co., Inc. v. Raab*, 180 F.App'x 316, 320 (3d Cir. 2006).

[19] *Id.* at 96.

[20] *Id.* at 92-93.

[21] *Id.* at 96.

[22] *Id.*

[23] *York Group, Inc. v. Pontone*, No. 10-1078, 2012 WL 3127141(W.D.Pa. July 31, 2012) (quoting *McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006)).

[24] *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 351 (3d Cir. 2013) (quoting *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 62-63 (1st Cir. 1993)).

[25] 18 F.Supp. 3d 627, 634 (E.D.Pa. 2014).

[26] *Id.*

[27] No. 14-971, 2014 WL 12619153, *2 (D.N.J. July 30, 2014).

[28] *Johnson*, 724 F. 3d at 353.

[29] *McGowan Grain, Inc. v. Sanburg*, 403 N.W. 2d 340, 349 (Neb. 1987).

[30] *Arndt v. Johnson & Johnson*, No. 12-6633, 2014 WL 882777, *6 (E.D.Pa. March 5, 2014) ("the key inquiry is not the location of specific people, but the location of specific functions – the actual center of direction, control and coordination…").

[31] *See also 212 Marin Boulevard, LLC v. Chicago Title Ins. Co.*, No. 09-6366, 2010 WL 3169280, *3 (D.N.J. July 8, 2010) (explaining *Hertz* "nerve center" test to distinguish the "center of corporate activities" test formerly applied in this Circuit to find a Nebraska corporation's nerve center in Florida which housed its president and chief financial officer along with other

officers despite the bylaws reciting a principal place of business in Nebraska and home office listed as Nebraska).

[32] *Hertz*, 559 U.S. at 96.

[33] In *DeLuca v. Allstate New Jersey Ins. Co.*, No. 11-4129, 2011 WL 3794229, *5 (D.N.J. Aug. 25, 2011), Judge Martini cited, among other reasons, the location of the corporate president and "the vagueness" of a declaration failing to clearly identify the location of direction and control to warrant a finding the court lacked diversity jurisdiction.